IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREN ROWLAND,                          )
                                        )   Civil Action No. 2:12-cv-01474
            Plaintiff,                  )   Judge Mark R. Hornak
                                        )
v.                                      )
                                        )
NOVARTIS PHARMACEUTICALS                )
CORP.,                                  )
                                        )
            Defendant.                  )

GEORGE MACHEN and STACY                 )
MACHEN,                                 )   Civil Action No. 2:12-cv-01476
                                        )   Judge Mark R. Hornak
            Plaintiffs,                 )
                                        )
v.                                      )
                                        )
NOVARTIS PHARMACEUTICALS                )
CORP.,                                  )
                                        )
            Defendant.                  )

JOHN ORR,                               )
                                        )   Civil Action No. 2:12-cv-01715
            Plaintiff,                  )   Judge Mark R. Hornak
                                        )
v.                                      )
                                        )
NOVARTIS PHARMACEUTICALS                )
CORP.,                                  )
                                        )
            Defendant.                  )

**OPINION**

**Mark R. Hornak, United States District Judge**

Plaintiffs Karen Rowland ("Ms. Rowland"), George Machen ("Mr. Machen"), Stacy Machen ("Mrs. Machen"), and Michelle Pratt Orr ("Ms. Orr") bring strict liability and negligence claims against the Defendant, Novartis Pharmaceuticals Corporation ("NPC"), alleging that they or their spouse developed a painful and permanently disfiguring condition as a result of using Defendant's prescription medication for the purpose of managing metastatic bone cancer. Pending before the Court are NPC's Motions to Preclude Punitive Damages, ECF Nos. 53 and 55, in which NPC requests that the Court grant summary judgment in its favor on claims for punitive damages by Ms. Rowland and the Machens.[1]

Having carefully considered the Plaintiffs' Complaints, ECF 2:12-cv-01476-MRH, No. 1 and ECF 2:12-cv-01474-MRH, No. 1, Defendant's Motions to Preclude Punitive Damages, ECF Nos. 53 and 55, Defendant's Briefs in Support, ECF Nos. 54 and 56, Plaintiffs' Brief in Opposition, ECF No. 84, and Defendant's Reply Brief, ECF No. 87, the Court concludes that Pennsylvania law applies to the claims of Ms. Rowland and the Machens for punitive damages and denies NPC's Motions.[2]

## I.    BACKGROUND

Ms. Rowland is a citizen of Pennsylvania, residing in Export, Pennsylvania. Rowland Compl. ¶ 2 ("RC"). Beginning in September 2004, Ms. Rowland was prescribed, purchased, and was infused with the drug Zometa after the breast cancer she had developed metastasized to her

---

[1] These cases were previously consolidated for pretrial proceedings.

[2] Also pending before the Court are Ms. Orr's Motion to Amend her original Complaint, Fed. R. Civ. P 15(a), to add a claim for punitive damages and Plaintiffs' Motion to Consolidate their cases for trial. ECF Nos. 40 and 51. Following review of Ms. Orr's Motion to Amend, ECF No. 40, her Brief in Support, ECF No. 41, and Defendant's Brief in Opposition, ECF No. 59, for the reasons stated in this Opinion, the Court will grant the motion to allow Ms. Orr to include a claim for punitive damages in her Amended Complaint. Upon consideration of Plaintiffs' Motion to Consolidate, ECF No. 51, their Brief in Support, ECF No. 52, and Defendant's Brief in Opposition, ECF No. 58, the Court denies the motion without prejudice to its reassertion at a later juncture.

bones. ECF No. 54, at 3. Zometa is designed, manufactured, marketed, distributed, and sold by Defendant NPC, a Delaware corporation with its principal place of business in New Jersey. OC ¶¶ 4, 6. Zometa is a prescription medication for patients with cancer that has metastasized to their bones. ECF No. 54, at 3. The drug prevents cancer-related bone damage that can lead to paralysis and death. *Id.* Zometa has been approved by the United States Food and Drug Administration ("FDA"). RC ¶ 7. Ms. Rowland alleges that her use of Zometa caused her to develop osteonecrosis of the jaw ("ONJ"), a permanently disfiguring and painful condition that may result in complete loss of the jaw bone. RC ¶ 1.

Mr. and Mrs. Machen are citizens of Pennsylvania, residing in New Kensington, Pennsylvania. Machen Compl. ¶¶ 2-3 ("MC"). Beginning in July 2006, Mr. Machen was prescribed, purchased, and was infused with Zometa for treatment of his stage IVB Hodgkin's disease, which had metastasized to his bones. ECF No. 56, at 3. The Machens also allege that Mr. Machen's use of Zometa caused him to develop ONJ.

Ms. Orr has been substituted as a party in this action for her late husband, John Orr ("Mr. Orr"). ECF No. 47, at 2. Mr. Orr lost a long battle with cancer on October 8, 2012. ECF No. 43, at 1. At all times relevant to this action, Mr. and Mrs. Orr were citizens of Pennsylvania and residents of Bethel Park, Pennsylvania. Beginning in January 2003, Mr. Orr was prescribed, purchased, and was infused with Zometa as part of his treatment for Stage II multiple myeloma, which had metastasized to his bones. ECF No. 36, at 2. Like Ms. Rowland and Mr. and Mrs. Machen, Ms. Orr claims that her husband's use of Zometa caused him to develop ONJ. Orr Compl. ¶ 14 ("OC").

Ms. Rowland and the Machens originally filed suit in the federal court for the District of Columbia. *See* RC, at 1 and MC, at 1. Mr. Orr initially filed suit in the federal court for the

3

Southern District of New York. OC ¶ 1. All three cases were conditionally transferred to the Middle District of Tennessee for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407, and then transferred to the Western District of Pennsylvania. ECF Nos. 4, 9. The cases have been consolidated here for pretrial matters at 2:12-cv-01474-MRH.

Plaintiffs claim that in 2002 or before, NPC received information from doctors that patients who were treated with Zometa and Aredia – a "first generation" version of Zometa NPC also manufactures – had been diagnosed with ONJ. RC ¶ 13. Plaintiffs also claim that in clinical trials for Zometa, several subjects reported ONJ-like symptoms, but NPC ignored those test results. RC ¶ 10. Additionally, in 2004, a group of physicians published a report about patients being diagnosed with ONJ after being given Aredia and Zometa. RC ¶ 6. Despite this information, NPC allegedly did not warn physicians or the public about such side effects until September 2004 and has continued to market Zometa. RC ¶¶ 13-14. Plaintiffs further suggest that the dosage instructions on the Zometa label constituted an overdose, which contributed to the severity of their side effects. RC ¶¶ 16-20. On these claims, Plaintiffs bring five causes of action against NPC for strict liability, negligent manufacture, negligent failure to warn, breach of express warranty, and breach of implied warranty, and claim they are entitled to both compensatory and punitive damages.

NPC does not dispute that Pennsylvania law applies to the Plaintiffs' claims for compensatory damages. However, NPC argues that this Court should apply New Jersey law to the Plaintiff's punitive damages claims because NPC maintains its principal place of business in New Jersey, and the conduct that it maintains is most relevant to the punitive damages claims – NPC's corporate decisions regarding Zometa labeling, clinical trials, adverse event reporting, and marketing – occurred in New Jersey. It is not clear from the record where Zometa is

4

manufactured, or where the labels for the drug are produced. Under New Jersey law, punitive damages may not be awarded in products liability actions involving FDA-approved drugs, unless a plaintiff shows that the defendant "knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question." N.J. Stat. Ann. § 2A:58C-5c. NPC asserts that (1) New Jersey's relevant punitive damages statute is impliedly preempted by the United States Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (*See McDarby v. Merck & Co.*, 949 A.2d 223, 272-76 (N.J. Super. Ct. App. Div. 2008))[3], (2) punitive damages are not available in this case, and (3) the Court should grant summary judgment in its favor on the Plaintiffs' punitive damages claims.

Plaintiffs contend that because they are Pennsylvania residents, were prescribed Zometa and treated in Pennsylvania by Pennsylvania doctors, purchased Zometa in Pennsylvania, were infused with Zometa in Pennsylvania, and suffered the effects of ONJ here, allegedly as a result of taking Zometa, Pennsylvania law should also apply to their claims for punitive damages.[4] They argue that the conduct engaged in by NPC that is most relevant to the issue of punitive damages occurred in Pennsylvania – NPC sought to do business in Pennsylvania and obtained permission to do so, marketed Zometa in Pennsylvania, sold Zometa here, and allegedly failed to properly warn Pennsylvania medical professionals of the potential side effects of Zometa. Plaintiffs also point to the fact that NPC's parent company, Novartis AG, is a Swiss company, and claim that Novartis AG actually made decisions regarding Zometa labeling in Switzerland, not in New Jersey. ECF 84-4.

---

[3] Given our disposition of the choice of law issue, we need not consider the application of that principle here.

[4] Pennsylvania law allows punitive damages to be awarded against a pharmaceutical manufacturer. *Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 492 (E.D. Pa. 2010).

## II.    STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986).

In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *See id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

6

## B. Fed. R. Civ. P. 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[M]otions to amend pleadings should be liberally granted," *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004), and "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust," *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204; *see also Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason – such as . . . futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given'.").

"Futility" challenges an amendment's legal sufficiency. *Foman*, 371 U.S. at 182. In assessing futility, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) ("Futility is determined by the likelihood that the content of the amendment will survive a renewed motion to dismiss"). The Court of Appeals for the Third Circuit has noted that "an amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.*

Prejudice to the opposing party is "the touchstone for the denial of leave to amend." *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). "Such prejudice ordinarily is not considered to have occurred unless the Motion is made during or after the actual trial." *Bowser Cadillac, LLC v. Gen. Motors Corp.*, No. 07–

7

1149, 2008 WL 2802523, at *3 (W.D. Pa. July 18, 2008) (quoting *Jenn–Air Prods. Co. v. Penn Ventilator,* 283 F. Supp. 591, 594 (E.D. Pa. 1968)).

## III.   DISCUSSION

### A. Choice of Law

Defendant contends that New Jersey law applies to the issue of punitive damages. ECF No. 53 at 1.[5]  Plaintiffs, however, argue that Pennsylvania law governs punitive damages in this case. ECF No. 84 at 2.

Because Ms. Rowland and the Machens originally filed suit in the federal court for the District of Columbia, and their cases were transferred pursuant to 28 U.S.C. § 1407(a), the parties agree that the District of Columbia's choice of law rules apply to the punitive damages claims of Ms. Rowland and the Machens.[6]  *See* ECF No. 54 at 3.  Likewise, because Mr. Orr originally filed suit in the federal court for the Southern District of New York, and the case was transferred pursuant to 28 U.S.C. § 1407(a), New York's choice of law rules apply to Ms. Orr's punitive damages claim. *See* ECF No. 84 at 6. *See also In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1496 (D.C. Cir. 1991) ("When a case is transferred pursuant to 28 U.S.C. § 1407(a) by the Panel on Multi–District Litigation, the transferee court must apply the choice of law rules of the states where the transferor courts sit."); *In re Asbestos Prods. Liab. Litig. (No. VI)*, CIV.A. MDL 875, 2010 WL 4158521, at *1 n.1 (E.D. Pa. Apr. 30, 2010) ("When a diversity action is transferred pursuant to 28 U.S.C. § 1407, however, the transferee court is obligated to apply the state substantive law as determined by the choice of law analysis required

---

[5] Defendant does not dispute that Pennsylvania law applies to the Plaintiffs' claims for compensatory damages. ECF No. 87 at 3.

[6] "The District of Columbia is treated as a state for choice-of-law purposes." *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 379 (D.D.C. 2012).

by the state in which the action was filed.").[7] Consequently, this Court must decide which state law as to punitive damages a District of Columbia court would apply as to the Machen and Rowland claims, as well as which state law on the subject a New York court would apply as to the Orr claim.

### 1. District of Columbia Choice of Law

Under District of Columbia law, the Court must first determine whether a "true conflict" exists between the laws of the competing jurisdictions. *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 100 (D.D.C. 2011). If there is no conflict, District of Columbia law applies by default. *Id.* If a conflict does exist, then "the courts of the District of Columbia employ a modified 'governmental interest analysis,' under which the court must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case." *Minebea Co. v. Papst*, 377 F. Supp. 2d 34, 37 (D.D.C. 2005).

In applying this analysis, a court is to look to the Restatement (Second) of Conflict of Laws to identify the jurisdiction with the "most significant relationship" to each issue in dispute. *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180 (D.C. Cir. 2006). To determine which jurisdiction has the most significant relationship to an issue in dispute, the court examines a list of contacts that various states might have with the litigation. When the issue is liability for a tort claim, a court considers (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the residence, domicile, place of incorporation

---

[7] *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 244 n.8 (1981) ("Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred.").

or place of business of the parties, and (d) the place where the parties' relationship, if any, is centered. *Id.* at 37-38 (citing Restatement (Second) of Conflict of Laws § 145 (1971)) (citations and quotations omitted).[8]

"District of Columbia choice of law rules permit courts to apply the laws of different jurisdictions to different causes of action and issues within a single case." *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 226-27 (D.D.C. 2011); *Minebea*, 377 F. Supp. 2d at 40 ("The issue of punitive damages is distinct from that of liability for the underlying claims, however, and choice of law for that issue must be analyzed separately."); *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 938 (D.D.C. 1984) (noting that District of Columbia choice of law principles may be applied separately to the issues involving damages, as "[s]tates' interests in compensatory damages differ from those involved in punitive damages"); *In re Air Crash Disaster at Washington, D.C. on Jan. 13, 1982*, 559 F. Supp. 333, 336 (D.D.C. 1983) (analyzing choice of law for punitive damages separately from choice of law for tort liability). Thus, "[t]he court must evaluate the interest of each jurisdiction with respect to the distinct issues to be adjudicated." *Estate of Botvin*, 772 F. Supp. 2d at 227.

### 2. New York Choice of Law

Under New York law, a court must first determine whether there is an "actual conflict" between the laws of the competing jurisdictions. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir.

---

[8] In evaluating the § 145 contacts, a District of Columbia court must consider the factors applicable to all choice-of-law tort decisions set out in Restatement (Second) of Conflict of Laws § 6(2). *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995). These factors are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. *In re Air Crash Disaster at Washington, D.C., on Jan. 13, 1982*, 559 F. Supp. 333, 342 n.9 (D.D.C. 1983). Under District of Columbia law, the most important of these factors in a tort case include the relevant policies of the forum and the relevant policies of other interested states. *Id.* at 342.

1998). In the absence of an actual conflict, the law of New York applies by default. *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000). When the law of each state provides a materially different substantive rule, a conflict of laws analysis is required. *Id.* In tort actions, if there is an actual conflict, "New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Curley*, 153 F.3d at 12 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). In deciding which state has the prevailing interest, courts must "look only to those facts or contacts that relate to the purpose of the particular laws in conflict." *AroChem Int'l*, 968 F.2d at 270. Under this analysis, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.*

When a court applies the interests analysis to tort cases, it must distinguish between conflicts involving conduct-regulating rules and conflicts involving loss-allocating rules. *Guidi v. Inter-Continental Hotels Corp.*, 2003 WL 1907901, at *1 (S.D.N.Y. Apr. 16, 2003). Where the conflict involves conduct-regulating rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Guidi*, 2003 WL 1907901, at *1 (quoting *Cooney v. Osgood Mach.*, 612 N.E.2d 277, 280 (N.Y. 1993)). When the conflict concerns loss-allocating rules, a court must "analyze the respective domiciliary interests" in light of the rules laid out in the New York Court of Appeals' opinion in *Neumeier v. Kuehner*, 286 N.E.2d 454 (N.Y. 1972). *Id.*

New York choice of law rules allow for a court to resolve different substantive issues in a single tort case under the laws of different states "where the choices influencing decisions differ." *Simon*, 124 F. Supp. 2d at 75. The rules permit severance of damages issues and application of a different state's law to those issues. *Id.* at 76 (quoting *Babcock v. Jackson*, 191

11

N.E.2d 279 (N.Y. 1963)). "Since punitive damages serve a completely different purpose than compensatory damages, it is only logical that courts have determined that the issue of punitive damages is distinct from the issue of compensatory damages and, therefore, the application of different laws to those different issues may be appropriate." *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 2006 U.S. Dist. LEXIS 27387, at *74 (S.D.N.Y. May 9, 2006). When separately analyzing a demand for punitive damages under a different state's law, a court must "consider 'the object or purpose of the wrongdoing,' and give controlling effect to the 'law of the jurisdiction with the strongest interest in the resolution of the particular issue presented." *Fed. Hous. Fin. Agency v. Ally Fin. Inc.*, 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012) (quoting *James v. Powell*, 225 N.E.2d 741, 746-47 (N.Y. 1967)).

### 3. New Jersey Law Actually Conflicts with Pennsylvania Law

There is an actual conflict between the laws of New Jersey and Pennsylvania on the issue of punitive damages.[9] In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005); *Wolfe*, 703 F. Supp. 2d at 492 (punitive damages may be awarded against a pharmaceutical manufacturer). New Jersey caps punitive damages at the greater of $350,000 or five times the compensatory damages award. N.J. Stat. Ann. § 2A:15–5.14(b). In addition, under the New Jersey Products Liability Act, punitive damages are not available if a product was approved by the FDA, unless "the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question." N.J. Stat. Ann. § 2A:58C–5(c). *See Deutsch v. Novartis Pharms. Corp.*, 723 F. Supp. 2d 521,

---

[9] The parties agree that the two states with relevant interests here are Pennsylvania and New Jersey. ECF No. 54 at 5; ECF No. 84 at 6 n.2.

524 (E.D.N.Y. 2010) (explaining New Jersey punitive damages law). Pennsylvania has no such limitations on the recovery of punitive damages. In light of these clear conflicts, the Court next considers which jurisdiction has the "most significant relationship" to the issue.

### 4. District of Columbia Choice of Law – Pennsylvania has a More Significant Relationship

Because there is a true conflict between the relevant punitive damages laws of Pennsylvania and New Jersey, the Court must determine, using the factors set out in Restatement (Second) of Conflicts § 145, which state has the most significant relationship to this particular dispute. When analyzing a choice of law issue with respect to punitive damages, the states with the most significant interests are those in which the conduct causing the injury occurred and where the defendant maintains its principal place of business and place of incorporation. *Keene*, 597 F. Supp. at 938 (citing Restatement (Second) of Conflict of Laws § 145 cmts. c-e). Where the injury occurred and where the relationship of the parties is centered are less important in the punitive damages context. *Id.* at 939. However, in a tort case, when the injury and the conduct causing the injury occur in the same state, the law of that state will be applied, subject only to "rare exceptions." *Warriner v. Stanton*, 475 F.3d 497, 503 (3d Cir. 2007) (quoting Restatement (Second) of Conflict of Laws § 145 cmt. d).

The first factor is the place where the injury occurred. NPC does not dispute that all of the Plaintiffs' injuries occurred in Pennsylvania. Instead, NPC argues that the place of injury is fortuitous – because it marketed and sold Zometa throughout the country, ONJ as an alleged side effect of Zometa could have occurred anywhere. NPC asserts that there is no basis to conclude that the alleged corporate conduct relevant to Plaintiffs' punitive damages claims made the injury more likely to occur in Pennsylvania than in any other state.

13

The Court is not convinced that the place of injury was at all fortuitous in this case. An injury is fortuitous when "it bears little relation to the occurrence and the parties with respect to the particular issue." *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 881-82 (D.N.J. 2010) (quoting Restatement (Second) of Conflicts of Law § 145 cmt. e). In other words, the conduct did not determine the location of the injury, and the intentions and decisions of the parties did not determine the location of the injury with respect to the plaintiffs in question. *Id.* at 882 (citing *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 347 (3d Cir. 2000)). When the Plaintiffs are domiciled in the place of injury, purchase the product in question there, and use it there, the place of injury is not fortuitous. *Id.* Here, realistically this particular injury to these particular Plaintiffs could not have occurred anywhere other than Pennsylvania. It was not fortuitous that the Plaintiffs were injured in Pennsylvania, and the Court affords weight to this factor. [10]

The second factor to be considered is the place where the conduct causing the injury occurred. In prescription drug products liability cases involving an alleged failure to warn, the conduct causing injury occurs primarily where the injured party was prescribed and ingested the drug. *Yocham*, 736 F. Supp. 2d at 882; *Bearden v. Wyeth*, 482 F. Supp. 2d 614, 620 (E.D. Pa. 2006); *Bortell v. Eli Lilly and Co.*, 406 F. Supp. 2d 1, 5 (D.D.C. 2005); *Montgomery v. Wyeth*, 540 F. Supp. 2d 933, 944 (E.D. Tenn. 2008). The Plaintiffs and their doctors allegedly failed to receive adequate warnings in Pennsylvania, Plaintiffs were prescribed the drug in Pennsylvania,

---

[10] NPC cites to other Zometa litigation cases where district courts concluded that the place where the injury occurred was fortuitous because it bore little relation to the occurrence and to the parties with respect to the particular issue of failure to warn. *See Zimmerman v. Novartis Pharms. Corp.*, 889 F. Supp. 2d 757, 762-63 (D. Md. 2012); *Krause v. Novartis Pharms. Corp.*, 926 F. Supp. 2d 1306, 1310 (N.D. Fla. 2013). The Court would note, however, that another district court has considered the place of injury to be relevant where the plaintiffs lived, purchased, and used Zometa there. *Baldwin v. Novartis Pharms. Corp.*, No. 2:06-cv-4049-NKL (W.D. Mo. Aug. 26, 2011). Give that Zometa was marketed into and prescribed in Pennsylvania, and the Plaintiffs lived in Pennsylvania, this Court cannot conclude that the place of injury – Pennsylvania – was a matter of fortuity.

and were infused with the drug in Pennsylvania. NPC did conduct research regarding Zometa and make decisions on Zometa marketing, labeling, and packaging in New Jersey. However, the place where the Defendant engaged in certain conduct is of less significance in situations where a potential Defendant might choose to conduct his activities in a state whose tort rules are favorable. *Iskowitz v. Cessna Aircraft Co.*, 2010 WL 3075476, at *5 (D. Col. Aug. 5, 2010) (quoting Restatement (Second) of Conflict of Laws § 145 cmt. e). "The more relevant conduct at issue is what Defendant revealed to Plaintiff and [Plaintiff's] doctor about the drug." *Yocham*, 736 F. Supp. 2d at 882. That conduct occurred in Pennsylvania, when NPC marketed and sold Zometa, and through the packaging and warning labels it approved, allegedly misinformed Plaintiffs and their doctors about Zometa's possible side effects.[11]

The third factor is the residence, domicile, place of business, or place of incorporation of the parties. At all times relevant to this action, Plaintiffs were domiciled in Pennsylvania. NPC is incorporated in Delaware[12] and has its principal place of business in New Jersey. With respect to this factor, NPC emphasizes that the location of the Defendant's principal place of business is a factor courts have considered to be of greatest (if not conclusive) importance in the context of punitive damages choice of law issues. *Keene*, 597 F. Supp. at 939, *Minebea*, 377 F. Supp. 2d at 40-41, *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996).

The Court agrees that the principal place of business of the Defendant is a relevant factor. However, as previously noted, where the injury, and the conduct causing it, occur in the same state (here, Pennsylvania), the law of that state is almost uniformly applied. *Warriner*, 475 F.3d

---

[11] *See In re Air Crash Disaster at Washington, D.C. on Jan. 13, 1982*, 559 F. Supp. 333, 356 (D.D.C. 1983) (applying the punitive damages law of the District of Columbia where "the injurious effects of the conduct were predominantly felt in the District of Columbia.").

[12] The parties have agreed that Delaware law does not apply to this case.

at 503. Courts typically follow this rule because "a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." *Id.* Pennsylvania has a strong interest in regulating the conduct of pharmaceutical companies, whether Pennsylvania-based or not, where, as in this case, they knowingly and affirmatively reach into Pennsylvania, conduct business within its territory, and market and sell products that allegedly harm Pennsylvania citizens.

NPC contends that Plaintiffs' Pennsylvania domicile should not influence the Court's choice of law. As support, NPC refers to cases advancing the proposition that once a plaintiff is made whole by recovery of compensatory damages under the law of his or her domicile, that state's interest in the application of its law is satisfied. *Keene*, 597 F. Supp. at 938-39, *Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 241 (D.D.C. 2005). Thereafter, according to NPC, the law of the state where the Defendant maintains its principal place of business claims a more significant (if not conclusive) interest in disciplining companies within its territory and deterring future harmful conduct by them. Indeed, the primary purpose of New Jersey's punitive damages statute is "to punish the defendant and to deter that defendant from repeating such conduct." N.J.S.A. § 2A:15-5.14(a).

The applicability of the relevant policies behind each interested state's law is one of the § 6(2) factors most relevant to a choice of law concerning punitive damages, and the Court accordingly takes the policy behind New Jersey's punitive damages statute into account. However, Pennsylvania's legitimate interest in regulating the conduct of pharmaceutical manufacturers who market their products to Pennsylvania doctors and sell their products in Pennsylvania to Pennsylvania citizens is also quite substantial and cannot be ignored. Although the Court respects New Jersey's interest in punishing and deterring the conduct of corporations

16

domiciled there on its own terms, the conduct far more relevant to the issue of punitive damages here occurred in Pennsylvania.

Pennsylvania maintains an interest in its own punitive damages law, which is intended to protect its citizens from defective products and to encourage manufacturers, wherever headquartered, to produce safe products. When those products are systematically introduced into Pennsylvania, Pennsylvania has a legitimate and substantial interest in applying its punitive damages law to conduct that occurred in Pennsylvania and allegedly caused an injury within its borders. *See Wolfe*, 703 F. Supp. 2d at 493-494; *Kukoly v. World Factory, Inc.*, 2007 WL 1816476, at *3 (E.D. Pa. Jun. 22, 2007) (citing *LeJune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)). New Jersey's legislative decision as to the availability and potential magnitude of punitive damages cannot conclusively extend to conduct by a New Jersey corporation that occurred in Pennsylvania and allegedly caused injuries in Pennsylvania in those circumstances in which Pennsylvania also has such a vital and articulated interest in preventing harm to its citizens and in which the Defendant has knowingly and purposefully elected to deliver its products to Pennsylvania residents. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996) ("[T]he economic penalties that a State...inflicts on those who transgress its laws, whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy.").

The fourth factor, the place where the parties' relationship is centered, receives less consideration in analyzing punitive damages issues. *Minebea*, 377 F. Supp. 2d at 40-41. However, for the reasons previously noted by the Court in concluding that both the place of injury and the place where the conduct most relevant to the cause of injury occurred was

Pennsylvania, the parties' relationship is also centered in Pennsylvania. *Bearden*, 482 F. Supp. 2d at 620; *Bortell*, 406 F. Supp. 2d at 5. Pennsylvania is the place of injury, the place where the most relevant conduct causing the injury occurred, the Plaintiffs' domicile, and the center of the parties' relationship. New Jersey is the Defendant's principal place of business and the place where a portion of the conduct causing the injury occurred. On balance, for the reasons stated as to the application of the § 145 factors and § 6 principles, Pennsylvania law has the most significant interest as to the punitive damages issue.

NPC draws the Court's attention to previous District of Columbia federal district court cases for the proposition that the law of New Jersey should govern the Plaintiffs' punitive damages claims, because the most relevant conduct to this issue occurred in New Jersey.[13] However, when presented with similar facts, the district court in the District of Columbia has paralleled this Court's conclusion. In *Lakie v. SmithKline Beecham*, the plaintiff claimed that she developed a bone marrow disorder as a result of her use of the defendant's denture adhesive. 965 F. Supp. 49, 51 (D.D.C. 1997). The court applied Virginia law to the plaintiff's claims, including one for punitive damages, where the plaintiff resided in Virginia and purchased and used the adhesive in Virginia. *Id.* at 59. The court noted that the only connection between the action and the District of Columbia was that the defendant conducted business in District of Columbia, "as it does in many other states." *Id.* In *Long v. Sears Roebuck & Co.*, plaintiffs sued

---

[13] *Minebea Co v. Papst*, 377 F. Supp. 2d 34 (D.D.C. 2005), is distinguishable from the case at hand because that case involved a punitive damages claim concerning breach of fiduciary duty, fraudulent concealment, and negligent misrepresentation claims, where most of the underlying conduct concerning those claims occurred where defendants were located – Germany. In this case, although defendants made relevant corporate decisions regarding Zometa in the state of their principal place of business, they marketed and sold their product, and allegedly defectively warned and injured people, in Pennsylvania. The Court also finds *Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236 (D.D.C. 2005), unpersuasive here. In that case, the court found that there was a false conflict between the laws of the two demonstrably interested states, and applied Michigan law on that basis. *Id.* at 241. Therefore, that opinion is not helpful in considering how a District of Columbia court would decide a choice of law issue where a true conflict exists.

the defendant corporation for injuries it alleged were caused by the defendant's riding lawn tractor, which was designed and manufactured in South Carolina. 877 F. Supp. 8, 10 (D.D.C. 1995). The court applied District of Columbia law, because the plaintiffs placed an allegedly defective product into commerce and allegedly misrepresented its safety features in the District of Columbia, where the plaintiffs bought the tractor. *Id.* at 13. The court explained, "[i]f punitive damages are awarded, they would serve to punish the defendants for conduct occurring in the District of Columbia and would deter similar conduct from occurring in the District of Columbia." *Id.*

Numerous district courts within our own circuit have also applied the most significant relationship test in a comparable manner. In *Yocham v. Novartis Pharms. Corp.*, the court applied Texas law to a plaintiff's punitive damages claim where the plaintiff was domiciled in Texas, was prescribed NPC's product in Texas, and used and was allegedly injured by the drug in Texas. 736 F. Supp. 2d 875, 881-83 (D.N.J. 2010). The court noted that the fact that NPC researched and compiled information about the drug in question at its corporate headquarters in New Jersey was a relevant factor. *Id.* at 882. However, it concluded that "even if Plaintiff were not a domiciliary of Texas, more or less mooting this factor, Defendant's New Jersey presence would not outweigh all of the other connections to Texas." *Id.*

In *Wolfe v. McNeil-PPC, Inc.*, the court applied Maine law to the plaintiff's punitive damages claim. 703 F. Supp. 2d 487, 494-95 (E.D. Pa. 2010). In that case, the plaintiff purchased the medication that allegedly caused her injury in Maine, defendant's representations to a Maine doctor caused him to recommend the medication to the plaintiff, and the plaintiff was injured in Maine. *Id.* at 493. Although the defendant manufactured, tested, and marketed the drug in Pennsylvania, and also discussed decisions related to the drug and devised warnings for

the drug there, the court determined that "Maine, as the place where the drugs were prescribed and taken by one of its citizens, has a strong interest in applying its law to conduct that allegedly caused an injury in its borders." *Id.* at 494.

*Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602 (E.D. Pa. 2008), provides further guidance to the Court on this issue. In that case, the plaintiffs brought a products liability action against the defendant, a pharmaceuticals manufacturer, alleging that its drug caused the death of their daughter. *Knipe*, 583 F. Supp. 2d at 607. Although the defendant was domiciled in Pennsylvania and "likely made several decisions" regarding the study and marketing of the drug in question in Pennsylvania, the court concluded that the majority of crucial contacts, including the marketing, prescription, and purchase of the drug, as well as the injury, occurred in New Jersey. *Id.* at 638. On that basis, the court applied New Jersey law to the plaintiff's punitive damages claim. *Id.*

In *Bearden v. Wyeth*, 482 F. Supp. 2d 614, 620 (E.D. Pa. 2006), the Eastern District of Pennsylvania applied Arkansas law to the plaintiff's punitive damages claim where the plaintiff was prescribed and purchased the drug in question in Arkansas, received representations, warranties, and warnings concerning the drug in Arkansas, and allegedly experienced reactions to the drug in Arkansas. Although the defendant maintained its principal place of business in Pennsylvania, issued all representations, warranties, or warnings concerning the drug in Pennsylvania, and made relevant corporate decisions concerning the drug in Pennsylvania, the court concluded that "Arkansas has an interest in ensuring protection and compensation for a resident who [was harmed] within his home state allegedly…because he purchased and ingested a drug there that had been prescribed by a local doctor." *Bearden*, 482 F. Supp. 2d at 621.

20

NPC cites to other Zometa litigation cases where district courts concluded that the conduct relevant to plaintiffs' punitive damages claims – the corporate decisions with respect to labeling, packaging, warning, etc. – occurred at NPC's New Jersey headquarters, for the proposition that New Jersey punitive damages law alone may be applied in these, and similar, cases.[14] However, the Court is not persuaded by the reasoning in those cases. Instead, the Court finds the analysis of the District of Columbia federal district court in *Lakie* and *Long*, and that of district courts in our circuit in several similar cases, to be more convincing, given their recognition of the legitimate and strong interests of the state where the plaintiff's injuries occur, the drug was prescribed, and where the defendant has affirmatively and actively marketed and sold the drug at issue into the state. Accordingly, the law of Pennsylvania applies to the punitive damages claims of Ms. Rowland and the Machens.

### 5. New York Choice of Law – Pennsylvania Has the Prevailing Interest

Because there is an actual conflict between the relevant punitive damages laws of Pennsylvania and New Jersey, the Court must determine, using New York's interests analysis, which state has the greater interest in the litigation. New York courts have consistently held that because punitive damages laws are not meant to compensate plaintiffs, but to punish defendants, they are conduct-regulating rules. *Guidi*, 2003 WL 1907901, at *3. *See also Simon*, 124 F. Supp. 2d at 72 ("[L]ike punitive damages, [general compensatory damages] may bear directly on the regulation of dangerous conduct within [a state's] borders."); *Dickerson v. USAir, Inc.*, 2001 WL 12009, at *8 (S.D.N.Y. Jan. 4, 2001); *Lombard v. Economic Dev. Admin.*, 1995 WL 447651,

---

[14] *See Zimmerman*, 889 F. Supp. at 763; *Krause*, 926 F. Supp. 2d at 1310; *Guenther v. Novartis Pharms. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013); *Chiles v. Novartis Pharms. Corp.*, 923 F. Supp. 2d 1330, 1333 (M.D. Fla. Feb. 7, 2013); *Dopson-Troutt v. Novartis Pharms. Corp.*, 2013 WL 3808205 (M.D. Fla. Jul. 22, 2013); *Brown v. Novartis Pharms. Corp.*, 2012 WL 3066588, at *6-*7 (E.D.N.C. Jul. 27, 2012); *Deutsch v. Novartis Pharms. Corp.*, 723 F. Supp. 2d 521, 525-26 (E.D.N.Y. 2010); *Stromenger v. Novartis Pharms. Corp.*, 2013 WL 1748357 (D. Or. Apr. 22, 2013); *Talley v. Novartis Pharms. Corp.*, 2011 WL 2559974 (W.D.N.C. Jun. 28, 2011).

at *6 (S.D.N.Y. Jul. 27, 1995); *Wang v. Marzani*, 885 F. Supp. 74, 77 (S.D.N.Y. 1995); *Saxe v. Thompson Medical Co.*, 1987 WL 7362, at *1 (S.D.N.Y. Feb. 20, 1987); *Wilson v. Chevron*, 1986 WL 14925, at *3 (S.D.N.Y. Dec. 17, 1986). For conduct-regulating rules, the place where the tort occurred – where the conduct causing injury took place – is the determining factor. *Lombard*, 1995 WL 447651 at *6, n.5 (citing *AroChem*, 968 F.2d at 271).

In *Deutsch v. Novartis Pharms. Corp.*, 723 F.Supp.2d 521, 525-26 (E.D.N.Y. 2010), the only opinion rendered by a New York district court as to how New York choice of law rules apply to Zometa litigation, the court concluded that New Jersey law applied to the plaintiffs' punitive damages claims.[15] There, the plaintiffs were New York residents and were treated with Aredia and Zometa in New York. *Id.* at 525. However, the court noted that the most relevant contacts – those that related to the alleged conduct giving rise to the plaintiffs' claims for punitive damages – occurred in New Jersey. *Id.* Those contacts included NPC's alleged failure to conduct adequate clinical trials for Zometa and Aredia, its alleged failure to disclose information about the connection between those drugs and ONJ, and its alleged increase in recommended dosage for Zometa to improper quantities. *Id.*

This Court is not persuaded that the reasoning set forth in *Deutsch* controls here. It is certainly well-settled in New York that the law of the place of the tort applies to a claim for punitive damages. However, it is equally well-established that where the defendant's misconduct and the plaintiff's injury occur in different states, "the place of the tort is the jurisdiction where the 'last event necessary' to make the defendant liable occurred." *In re September 11th Litig.*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007) (quoting *Schultz v. Boy Scouts*

---

[15] In two other Zometa cases, the Eastern District of New York adopted its conclusion from *Deutsch* as to choice of law for punitive damages. *See Forman v. Novartis Pharms. Corp.*, 793 F. Supp. 2d 598, 600 (E.D.N.Y. 2011); *Davids v. Novartis Pharms. Corp.*, 2013 WL 5603824, at *5 (E.D.N.Y. Oct. 9, 2013).

*of America, Inc.*, 480 N.E.2d 679 (N.Y. 1985)). In this case, some of the defendant's alleged misconduct occurred in New Jersey, and the plaintiffs were injured in Pennsylvania. The last event necessary to make NPC liable plainly occurred in Pennsylvania. While NPC may have made corporate decisions regarding Zometa in New Jersey, its liability to these Plaintiffs would not be in dispute had it not marketed Zometa to them and their doctors in Pennsylvania, sold Zometa to them in Pennsylvania, and allegedly failed to warn them in Pennsylvania of Zometa's possible connection to ONJ. Therefore, under New York's interests analysis, Pennsylvania is the place where the tort occurred.[16]

The Court's conclusion as to this application of New York law is substantially bolstered by *In re Air Crash Near Clarence Center, New York on Feb. 12, 2009*, 798 F. Supp. 2d 481 (W.D.N.Y. 2011). In that case, the District Court for the Western District of New York methodically applied New York's interests analysis to determine whether the law of New York, where the air crash in question occurred, applied to punitive damages, or whether the law of Virginia, where the defendant maintained its principal place of business and made many of the relevant corporate decisions concerning the flight, controlled. *Id.* at 488. The court observed that the plaintiffs' punitive damages claims were "not limited to what occurred in [d]efendants' boardroom" – they included allegations that defendants were liable for their corporate decision-and-policy-making in Virginia, as well as for their failure to adequately supervise flight crews and their employees' operation of an aircraft in New York. *Id.* at 490. Here, the allegations on

---

[16] *See Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 741 (S.D.N.Y. 1996), holding that New York's punitive damages law applied where plaintiffs were domiciled in New York and allegedly suffered injuries from taking defendant's product L-tryptophan in New York, despite the fact that defendant corporation maintained its principal place of business in Japan and manufactured and tested the product there. The Court finds *Saxe v. Thompson Medical Co.* unhelpful, as the defendant's testing, advertising, and merchandising of the drug in question all occurred in New York, the place where it maintained its principal place of business. 1987 WL 7362, at *1, n.1 (S.D.N.Y. 1987). Here, the drug was apparently advertised and merchandised in all fifty states, including Pennsylvania.

which Plaintiffs ground their punitive damages claims range well beyond NPC's boardroom in New Jersey; they include claims that NPC marketed and sold Zometa to them in Pennsylvania, and failed to properly warn them there, while knowing of Zometa's potentially devastating side effects.

The *In re Air Crash* court also considered that while the defendant made most of its corporate decisions in Virginia, plaintiffs had presented evidence that some of the relevant corporate conduct could have occurred in New Jersey, or in Tennessee, the location of the defendant's parent company. *Id.* at 491. Plaintiffs in this case point to evidence that some decisions about Zometa, including labeling choices, may have been made by NPC's parent company, Novartis AG, at its headquarters in Switzerland. While the Plaintiffs do not request that the Court apply Swiss law to the punitive damages claim, such evidence was relevant to a New York court in deciding that Virginia's interest in its punitive damages law applying was not paramount.

Finally, and most significantly, the *In re Air Crash* court wrote, "although relevant corporate decisions may have been made in Virginia, the alleged effect of those decisions came to disastrous fruition in New York." *Id.* On that basis, the court found that the "last event necessary" to make the defendant liable occurred in New York, where the plane crashed. *Id.* Similarly, in this case, although the Plaintiffs allege that NPC engaged in reprehensible conduct in making decisions about Zometa in New Jersey, the alleged effects of those decisions, to these Plaintiffs, were borne out in Pennsylvania. The *Deutsch* court seemingly bypassed this central factor of the New York interests analysis in making its determination. Consequently, this Court declines to treat its opinion as controlling, concludes that the reasoning of the *In re Air Crash* court is persuasive, and applies Pennsylvania law to Ms. Orr's punitive damages claim also.

**B. Plaintiff Orr's Motion to Amend**

Ms. Orr has moved to amend her complaint to add a claim for punitive damages. Because Pennsylvania law allows for punitive damages and Pennsylvania law would apply to her claim, Ms. Orr's amendment would not be futile. While this case has been ongoing for years, it has not yet been set for trial [*See Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279-80 (E.D. Pa. 2010) (allowing plaintiff to amend complaint while defendant's motion for summary judgment was pending); *E.E.O.C. v. Grane Healthcare Co.*, 2013 WL 1102880, at *5 (W.D. Pa. Mar. 15, 2013) (allowing plaintiff to amend complaint before summary judgment phase)], and the Third Circuit has a liberal amending rule. *Long*, 393 F.3d at 400, and *Arthur*, 434 F.3d at 204. Therefore, the Court will grant Ms. Orr's Motion to Amend.

**C. Motion to Consolidate Cases For Trial**

The Plaintiffs have filed a Motion to Consolidate their cases for trial. Because it is premature to consolidate the cases for trial at this time, the Court will dismiss the motion without prejudice to its reassertion at a later time.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motions for Summary Judgment are denied.

Plaintiff Orr's Motion to Amend is granted. Plaintiffs' Motion to Consolidate is denied without

prejudice. An appropriate order will follow.

Mark R. Hornak
United States District Judge

Dated: November 22, 2013

cc:  All counsel of record